IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RENEE ROHRBAUGH, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 06-783-JJF |
| | : |
| MICHAEL J. ASTRUE, | : |
| Commissioner of Social | : |
| Security, | : |
| | : |
| Defendant. | : |
| | : |
| | : |

Angela Pinto Ross, Esquire of DOROSHOW, PASQUALE, KRAWITZ & BHAYA, Wilmington, Delaware.
Attorney for Plaintiff.

Colm F. Connolly, Esquire, United States Attorney, and Patricia A. Stewart, Esquire, Special Assistant United States Attorney, of the OFFICE OF THE UNITED STATES ATTORNEY, Wilmington, Delaware. Of Counsel:   Michael McGaughran, Esquire, Regional Chief Counsel, and Kenneth DiVito, Esquire, Assistant Regional Counsel of the SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania.
Attorneys for Defendant.

**MEMORANDUM OPINION**

December  5 , 2008
Wilmington, Delaware

Farnan, *Joseph Jaine* District Judge.

Presently before the Court is an appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) filed by Plaintiff, Renee Rohrbaugh, seeking review of the final administrative decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act (the "Act"), respectively. 42 U.S.C. §§ 401-433; 1381-1383f. Plaintiff has filed a Motion For Summary Judgment (D.I. 10) requesting the Court to enter judgment in her favor. In response to Plaintiff's Motion, Defendant has filed a Cross-Motion For Summary Judgment (D.I. 14) requesting the Court to affirm the Commissioner's decision. For the reasons set forth below, Defendant's Cross-Motion For Summary Judgment will be granted, and Plaintiff's Motion For Summary Judgment will be denied. The decision of the Commissioner dated March 19, 2004, will be affirmed.

## BACKGROUND

### I. Procedural Background

Plaintiff protectively filed an application for DIB and SSI on February 6, 2002, alleging disability since May 1, 2000, due to asthma, Chronic Obstructive Pulmonary Disease ("COPD"), chronic bronchitis, emphysema, depression, memory loss, urinary problems, fatigue, osteoarthritis and injuries from an auto accident which occurred in June 1998. (Tr. 104-106, 121-130).

1

Plaintiff's application was denied initially and upon reconsideration. (Tr. 62-67, 70-74). Thereafter, Plaintiff requested a hearing before an administrative law judge (the "A.L.J."). (Tr. 39, 75) On March 19, 2004, the A.L.J. issued a decision denying Plaintiff's application for SSI and DIB. (Tr. 21-34). Following the unfavorable decision, Plaintiff timely appealed to the Appeals Council. (Tr. 20, 884-889). On October 24, 2006, the Appeals Council denied Plaintiff's request for review (Tr. 9-13), and the A.L.J.'s decision became the final decision of the Commissioner. Sims v. Apfel, 530 U.S. 103, 107 (2000).

After completing the process of administrative review, Plaintiff filed the instant civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of the A.L.J.'s decision denying her claim for DIB and SSI. In response to the Complaint, Defendant filed an Answer (D.I. 4) and the Transcript (D.I. 6) of the proceedings at the administrative level.

Thereafter, Plaintiff filed a Motion For Summary Judgment and Opening Brief in support of the Motion. In response, Defendant filed a Cross-Motion For Summary Judgment and a Combined Opening Brief in support of his Cross-Motion and Opposition to Plaintiff's Motion requesting the Court to affirm the A.L.J.'s decision. Plaintiff has filed a Reply Brief.

Accordingly, this matter is fully briefed and ripe for the Court's review.

## II. Factual Background

### A. Plaintiff's Medical History, Condition and Treatment

At the time of the A.L.J.'s decision, Plaintiff was fifty-one years old. (Tr. 25). Plaintiff has a high school education and past work experience as a cook, waitress, customer service representative, data entry operator and credit card clerk. (Tr. 44-45, 57, 123, 128, 131-135). Plaintiff alleges disability since May 1, 2000, and was insured for disability through March 31, 2005. (Tr. 108, 122). Plaintiff's detailed medical history is contained in the record; however, the Court will provide a brief summary of the pertinent evidence.

#### 1. Breathing Problems

Plaintiff has had a significant history of asthma, bronchitis and COPD, including two emergency room visits and one inpatient hospitalization for her symptoms. (Tr. 193-197, 246-257, 269-275, 517-606). Plaintiff also has a history of smoking approximately two packs of cigarettes a day for more than twenty-five years. (Tr. 315, 457). Although she has reduced her smoking, as of the hearing date in this case, Plaintiff still continued to smoke. (Tr. 48). Plaintiff has treated with Drs. Bonner and Vasile for her breathing conditions, which include symptoms of shortness of breath, orthopnea, chest tightness,

3

wheezing, rhonchi and coughing. (Tr. 450-452, 455-458, 487-608.
639-647, 808-816, 838-857, 882-883). Her treatment included
several bronchodilators and other medications to control her
symptoms. Her physicians also consistently recommended that she
stop smoking. (Tr. 450, 452, 458, 491, 493, 504-505, 510, 517,
639, 816, 839-842, 883).

Plaintiff's clinical and lab tests from 2001 and 2002 showed
mild obstructive lung disease and a moderate reduction in her
exercise capacity, the latter of which was attributed to
deconditioning. (Tr. 425-426, 455-456). No obstructive
impairments were identified in her lungs. Although Plaintiff's
most recent 2002 pulmonary function test showed a mild reduction
in Plaintiff's breathing capacity, there was improvement in her
expiratory flow rates following the use of a bronchodilator.
(Tr. 346-348). Plaintiff was unable, however, to complete lung
volumes during the test because of excessive coughing. (Tr.
350). X-rays and CT scans of Plaintiff's chest during this time
period were also normal. (Tr. 382-382).

Both Dr. Vasile and Dr. Bonner completed multiple impairment
questionnaires for Plaintiff. Dr. Bonner initially opined that
Plaintiff could sit, stand and walk 8 hours and lift and carry 10
pounds frequently and 20 pounds occasionally. He also found that
Plaintiff's symptoms were not likely to increase if she were
placed in a competitive environment, but that she should avoid

4

wetness, fumes, gases, temperature extremes, humidity and dust. He did not believe Plaintiff would need unscheduled breaks and opined that she would miss work less than one day a month. (Tr. 720-728). Dr. Bonner cited Plaintiff's pulmonary function test results in support of his conclusions.

Dr. Vasile gave Plaintiff a much more restrictive assessment opining that she could stand less than an hour and only carry between 5 and 10 pounds. He indicated that she needed to avoid environmental irritants like cigarette smoke and opined that she needed to take three to four unscheduled breaks a day and would miss work more than 3 times a month. Dr. Vasile echoed these recommendations in a later completed pulmonary residual functional capacity questionnaire. (Tr. 846-851, 858-861).

Shortly thereafter, Plaintiff wrote to Dr. Bonner asking him to complete her disability forms again, based on her whole record, and emphasizing to him that she is applying for "Total Disability meaning I can't work." (Tr. 729-730). Dr. Bonner revised his assessment opinion the following day after talking with Dr. Vasile and speaking with Plaintiff. In his revised opinion, Dr. Bonner opined that Plaintiff could only stand/walk for 1 hour and sit for 8 hours. Dr. Bonner also opined that there were now minimal, rather than no limitations, on her ability to use her fingers for grasping, twisting and fine manipulations and moderate, rather than no limitations, on her

5

ability to reach overhead to avoid shortness of breath. Contrary to his first assessment, he stated that her symptoms would worsen if placed in a competitive work environment, that she would need several unscheduled breaks, and she would likely be absent from work more than three times a month. (Tr. 713-718). Notably, Dr. Bonner cited the same pulmonary function tests he originally referred to in support of his revised opinion.

2. Mental impairments

For depression, Plaintiff was prescribed Zoloft and later Wellbutin by Dr. Bonner, who characterized Plaintiff's depression as clinically mild and stable. (Tr. 502-503, 508, 516, 520). Plaintiff was referred to Nancy F. Petit, a gynecologist for treatment of menopausal symptoms, including hot flashes, mood swings and night sweats. Dr. Petit started Plaintiff on estrogen replacement therapy and Fluoxetine for mood swings. (Tr. 327-328, 330-331, 453-454).

Plaintiff underwent a consultative psychological examination by S. M. Iqbal, Ph.D. Plaintiff indicated that she had short term memory loss since her car accident in June 1998. Plaintiff indicated that she was independent in her activities of daily living, but engaged in no social activities. Her IQ testing was within the average range of intelligence, but her memory was significantly deteriorated in certain areas. Dr. Iqbal diagnosed Plaintiff with adjustment difficulties, secondary to her medical

6

conditions and subjective depression. Dr. Iqbal completed a
psychological functional capacities evaluation form in which he
determined that Plaintiff was mildly limited in relating to other
people, daily activities, personal habits, constriction of
interests, ability to perform simple instructions under
supervision and performance of routine, repetitive tasks under
ordinary supervision. He also determined that she would be
moderately limited in sustaining work performance, work
attendance and coping with the pressures of ordinary work. Dr.
Iqbal concluded that Plaintiff was capable of managing her own
funds despite her memory deficits. (Tr. 332-337).

     In September 2002 and December 2002, state agency
consultants reviewed Dr. Iqbal's consultative report. They
opined that Plaintiff did not have a disabling mental impairment,
although she had moderate limitations in some work areas and mild
limitations in others. (D.I. 459-477, 619-638).

     In October 2002, Dr. Bonner prescribed Plaintiff Lorazepam
to treat her complaints of increased stress and anxiety. He
added Prozac during subsequent examinations. (Tr. 490-491).
Plaintiff identified her son as her primary stressor. Through
November 2003, Dr. Bonner described Plaintiff as pleasant, alert,
fully oriented with normal mood and affect, intact judgment and
intact insight. Dr. Petit also recorded some symptoms of
depression in her notes regarding Plaintiff's visits in 2001 and

                                                               7

2002. (Tr. 490-492, 497, 502-503, 505, 508, 516, 520, 647, 724, 733, 808-810, 812, 814, 816).

On January 6, 2004, Plaintiff was examined by a neurologist who reported that Plaintiff's memory, attention, language and fund of knowledge were all normal. (Tr. 879). A month later, Plaintiff was admitted to MeadowWood Hospital for a 24-hour psychiatric commitment for suicidal ideation. She had superficial lacerations on her wrist, was drinking and was having problems with her 19 year old son, whom she claimed was a drug user. She continued on anti-depressant medications after her release from the hospital. (Tr. 865-870).

   3. Urinary Incontinence

Plaintiff also has a history of urinary incontinence, particularly with coughing. (Tr. 327, 330-453, 680). Ultrasounds of her kidneys were normal. (Tr. 681). A cytoscopy showed an overactive bladder with some stress incontinence, but otherwise normal. (Tr. 310). A 2003 urodynamics study and cytoscopy by Jose M. Gueco, M.D., a urologist, were both normal. Dr. Gueco opined that most of Plaintiff's problem was due to her chronic cough that gave her stress incontinence. (Tr. 752). Dr. Gueco completed a medical questionnaire for Plaintiff and reported that Plaintiff's urodynamics study did not support her incontinence and that her symptoms and functional limitations were not reasonably consistent with her impairment. He opined

8

that Plaintiff would need a job that permitted ready access to a restroom but that her symptoms would not increase if she were placed in a competitive work environment. (Tr. 740-747).

4. Vocal lesions

Plaintiff also had a history of having lesions or polyps removed from her vocal cords. (Tr. 291-297, 311-323, 402, 448-449, 771-806). In connection with treatment for this impairment, she was advised to stop smoking. (Tr. 318, 320, 771, 775).

5. Right shoulder impairment

In July 2000, Plaintiff underwent an arthroscopy of her right shoulder for right shoulder impingement syndrome. (Tr. 283-285, 278-279). Her shoulder improved for several years, but by July 2003, she was complaining of recurrent discomfort. (Tr. 281, 768). A second arthroscopy was performed, and on her follow-up visit, she had good range of motion. (Tr. 653-655, 765).

B. The A.L.J.'s Decision

At the hearing, Plaintiff was represented by counsel. Plaintiff testified that she was unable to work due to asthma, constant bronchitis, shortness of breath, severe acid reflux, ulcers and urinary bladder problems. She noted that she has trouble breathing all the time and does not feel well. Plaintiff testified that she cut back on her smoking to half a pack a week and that she was trying all methods to quit smoking. She

9

testified that she uses a nebulizer daily, ranging from four to five times a day to every two hours on some days. She also testified that she is able to cook, grocery shop with assistance, vacuum and do laundry. (Tr. 42-55).

The A.L.J. also consulted a vocational expert. (Tr. 56-60). The vocational expert testified that if Plaintiff could perform sedentary work in a clean environment, she could return to her past work in the data entry, customer service and credit card fields. He also testified that if Plaintiff used her nebulizer on an unscheduled basis, three times a day for twenty minutes in an 8-hour work day, she would not be employable. However, the vocational expert testified that an employer would consider use of the nebulizer at lunch and during scheduled breaks. The A.L.J. further testified that Plaintiff would be precluded from doing customer service and credit card work, if she had coughing spells due to prolonged conversation. However, her data entry job would still be an available type of work, unless she had memory problems limiting her to 1 or 2 step tasks.

The A.L.J. also asked the vocational expert to consider whether there were any unskilled sedentary jobs in a clean environment, and the A.L.J. identified several jobs that would be consistent with a minimal amount of conversation and nothing more than 1 or 2 step tasks. The identified jobs included records clerk and inspector checker.

10

In her decision dated March 19, 2004, the A.L.J. found that Plaintiff suffered from asthma and bronchitis, which were "severe" impairments, but that her remaining physical impairments were not severe.  (Tr. 21-34).  The A.L.J. also found that Plaintiff's mental impairment was not severe because no "Part C" criteria were present and "at best the 'Part B' limitations imposed are a mild restriction in activities of daily living; mild difficulties in sustaining social functioning; mild difficulties in sustaining concentration, persistence or pace; and has caused no episodes of decompensation, for an extended period."  (Tr. 33).  The A.L.J. found that Plaintiff's impairments did not meet a listing and that her allegations regarding her limitations were "partially credible."  (Tr. 34). The A.L.J. further found that Plaintiff had the residual functional capacity to perform sedentary work in a clean environment and that her impairments did not preclude her from performing her past relevant work as a customer service representative, data entry clerk and credit card clerk.  (Tr. 34).  Accordingly, the A.L.J. concluded that Plaintiff was not under a disability within the meaning of the Act.

## STANDARD OF REVIEW

Findings of fact made by the Commissioner of Social Security are conclusive, if they are supported by substantial evidence. Accordingly, judicial review of the Commissioner's decision is

11

limited to determining whether "substantial evidence" supports the decision. <u>Monsour Medical Ctr. v. Heckler</u>, 806 F.2d 1185, 1190 (3d Cir. 1986). In making this determination, a reviewing court may not undertake a <u>de novo</u> review of the Commissioner's decision and may not re-weigh the evidence of record. <u>Id.</u> In other words, even if the reviewing court would have decided the case differently, the Commissioner's decision must be affirmed if it is supported by substantial evidence. <u>Id.</u> at 1190-91.

The term "substantial evidence" is defined as less than a preponderance of the evidence, but more than a mere scintilla of evidence. As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 555 (1988).

With regard to the Supreme Court's definition of "substantial evidence," the Court of Appeals for the Third Circuit has further instructed, "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores or fails to resolve a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence . . . or if it really constitutes not evidence but mere conclusion." <u>Kent v. Schweiker</u>, 710 F.2d 110, 114 (3d Cir. 1983). Thus, the substantial evidence standard embraces a

qualitative review of the evidence, and not merely a quantitative approach. Id.; Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

## DISCUSSION

### I. Evaluation Of Disability Claims

Within the meaning of social security law, a "disability" is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last, for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3). To be found disabled, an individual must have a "severe impairment" which precludes the individual from performing previous work or any other "substantial gainful activity which exists in the national economy." 20 C.F.R. §§ 404.1505, 416.905. In order to qualify for disability insurance benefits, the claimant must establish that he or she was disabled prior to the date he or she was last insured. 20 C.F.R. § 404.131, Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990). The claimant bears the initial burden of proving disability. 20 C.F.R. §§ 404.1512(a), 416.912(a); Podeworthy v. Harris, 745 F.2d 210, 217 (3d Cir. 1984).

In determining whether a person is disabled, the Regulations require the A.L.J. to perform a sequential five-step analysis.

13

20 C.F.R. §§ 404.1520, 416.920.  In step one, the A.L.J. must determine whether the claimant is currently engaged in substantial gainful activity.  In step two, the A.L.J. must determine whether the claimant is suffering from a severe impairment.  If the claimant fails to show that his or her impairment is severe, he or she is ineligible for benefits. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

If the claimant's impairment is severe, the A.L.J. proceeds to step three.  In step three, the A.L.J. must compare the medical evidence of the claimant's impairment with a list of impairments presumed severe enough to preclude any substantial gainful work.  Id. at 428.  If the claimant's impairment meets or equals a listed impairment, the claimant is considered disabled. If the claimant's impairment does not meet or equal a listed impairment, the A.L.J.'s analysis proceeds to steps four and five.  Id.

In step four, the A.L.J. is required to consider whether the claimant retains the residual functional capacity to perform his or her past relevant work.  Id.  The claimant bears the burden of establishing that he or she cannot return to his or her past relevant work.  Id.

In step five, the A.L.J. must consider whether the claimant is capable of performing any other available work in the national economy.  At this stage the burden of production shifts to the

14

Commissioner, who must show that the claimant is capable of performing other work if the claimant's disability claim is to be denied.  Id.  Specifically, the A.L.J. must find that there are other jobs existing in significant numbers in the national economy, which the claimant can perform consistent with the claimant's medical impairments, age, education, past work experience and residual functional capacity.  Id.  In making this determination, the A.L.J. must analyze the cumulative effect of all of the claimant's impairments.  At this step, the A.L.J. often seeks the assistance of a vocational expert.  Id. at 428.

## II.  Whether The A.L.J.'s Decision Is Supported By Substantial Evidence

By her Motion, Plaintiff contends that the A.L.J.'s decision is not supported by substantial evidence.  Specifically, Plaintiff contends that the A.L.J. (1) failed to accord the appropriate weight to the opinions of Plaintiff's treating physicians, Dr. Vasile and Dr. Bonner; (2) erred in concluding that Plaintiff's degenerative joint disease of the right shoulder, urinary incontinence, memory loss and vocal chord problems are not severe impairments; (3) failed to provide a specific rationale for rejecting Plaintiff's testimony under SSR 96-7P; and (4) erred in concluding that Plaintiff could return to her past relevant work.

The Court has reviewed the decision of the A.L.J. in light of the record evidence and concludes that it is supported by

15

substantial evidence. As the A.L.J. noted, the medical evidence in the record does not support a conclusion that Plaintiff's degenerative joint disease of the right shoulder, urinary incontinence, memory loss, or vocal chord impairments are severe impairments which significantly limit her mental or physical ability to perform basic work activities. 20 C.F.R. §§ 404.1521, 416.921. For example, Dr. Cranin reported that Plaintiff's shoulder improved after each of her surgeries and no significant restrictions on Plaintiff's work abilities are apparent in the record based on her shoulder problem. (Tr. 278-79, 281, 283-285, 653-54, 768). Although Plaintiff needed a second surgery three years after her first, Dr. Cranin reported that Plaintiff was doing well after her arthroscopic surgery and that she had good range of motion in her shoulder. (Tr. 765). There is also no medical evidence of significant effect or complications arising from Plaintiff's vocal lesions. Plaintiff's cytoscopy and urodynamics study were normal, except for some stress incontinence related to Plaintiff's coughing, and Dr. Gueco opined that the medical evidence did not support Plaintiff's incontinence. (Tr. 310, 752, 740-747). Although Dr. Gueco opined that Plaintiff would need a job that permitted ready access to a restroom, Dr. Gueco indicated that her symptoms would not be exacerbated by a competitive work environment and no

16

significant restrictions on Plaintiff's ability to work were
identified by Dr. Gueco.  (Tr. 744, 746).

As for her mental impairments, the Court likewise concludes
that substantial evidence supports the A.L.J.'s determination
that Plaintiff's ability to work was not significantly limited.
The A.L.J. thoroughly reviewed the record of Plaintiff's mental
impairments and, although she rejected Dr. Iqbal's assessment of
Plaintiff's memory impairment, she adequately explained her
reasons for doing so.  Specifically, the A.L.J. noted that while
Plaintiff scored poorly on the Wechsler memory test as noted by
Dr. Iqbal, she had a much higher score on the Working Memory
Index, her IQ scores were average, and as Dr. Iqbal noted,
Plaintiff did not have chronic brain syndrome.  (Tr. 334-336).
The A.L.J. also found that given Plaintiff's daily activities,
and Dr. Iqbal's ultimate assessment that, despite her memory
difficulties, Plaintiff would be only mildly limited in her
ability to understand simple instructions, carry out instructions
under ordinary supervision and perform routine, repetitive tasks
under ordinary supervision, Plaintiff's memory difficulties did
not result in significant restrictions on her ability to perform
basic work activities.  Additionally, the Court notes that the
record evidence from Dr. Bonner, and more recently from Dr.
Townsend, do not support significant difficulties with
Plaintiff's memory.  (Tr. 487-533, 808-16, 879).  Further, the

17

Court notes that there is record evidence in the form of state agency consultative psychiatric assessments which, consistent with the treatment notes of Dr. Bonner and Dr. Townsend and the ultimate conclusions of Dr. Iqbal regarding the impact of Plaintiff's memory difficulties on her ability to perform work, indicate that Plaintiff was not significantly limited in her ability to remember locations and work like procedures and understand remember and carry out simple instructions, and only moderately limited in her ability to sustain concentration and carry out and remember detailed instructions.

With regard to the A.L.J.'s credibility determination, the Court further concludes that the A.L.J. did not err in her partial acceptance of Plaintiff's credibility. The A.L.J.'s assessment of a plaintiff's credibility is afforded great deference, because the A.L.J. is in the best position to evaluate the demeanor and attitude of the plaintiff. See e.g. Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001); Griffith v. Callahan, 138 F.3d 1150, 1152 (7th Cir. 1998); Wilson v. Apfel, 1999 WL 993723, *3 (E.D. Pa. Oct. 29, 1999). However, the A.L.J. must explain the reasons for his or her credibility determinations. Schonewolf v. Callahan, 972 F. Supp. 277, 286 (D.N.J. 1997) (citations omitted). Factors the A.L.J. must consider in evaluating the veracity of a claimant's subjective complaints of pain include, among other things, consideration of Plaintiff's

18

daily activities; the location, duration, frequency and intensity of pain and other symptoms; the type, dosage, effectiveness and side effects of medication; other treatment methods used by the claimant and other factors concerning the claimant's functional limitations due to pain.  20 C.F.R. §§ 404.1529; 416.929.

Reviewing the A.L.J.'s decision as a whole, it is apparent to the Court that the A.L.J. provided a detailed analysis of the manner in which the medical evidence failed to fully support the extent of Plaintiff's complaints.  Accordingly, the Court cannot conclude that the A.L.J. erred in concluding that Plaintiff was not fully credible.

Plaintiff also contends that the A.L.J. failed to properly weigh the testimony of her treating physicians.  However, the A.L.J. is not required to accept the opinions of treating physicians if they are conclusory or unsupported by the medical evidence in the record.  The A.L.J. must, however, explain his or her reasons for rejecting the opinion of a treating physician.

In this case, the A.L.J. thoroughly reviewed each physician assessment in the record, and in light of certain conflicting opinions[1], the A.L.J. asked Dr. Vasile to provide support for his

---

[1]     The A.L.J. also noted a significant discrepancy between Dr. Bonner's initial assessment of Plaintiff and the assessment that followed Plaintiff's letter to Dr. Bonner that she was applying for "total disability."  In his subsequent assessment, Dr. Bonner indicated that he had consulted with Dr. Vasile. However, the A.L.J. ultimately credited Dr. Bonner's earlier medical assessment as more consistent with the medical evidence

medical source statement. However, Dr. Vasile did not provide any explanation for his statement, and as the A.L.J. noted, the medical evidence in the record did not support the extent of the limitations described by Dr. Vasile. Despite symptoms of wheezing and coughing noted in Plaintiff's treatment records, Plaintiff's CT scans were normal and pulmonary function tests did not reveal any marked findings. (Tr. 348, 356, 382-383, 428 455-456). Additionally, Plaintiff's physicians noted on examination several times that despite her symptoms, Plaintiff's chest was clear with generally good aeration in her lungs. Indeed, Dr. Bonner, and even Dr. Vasile, noted on some visits that Plaintiff's COPD/asthma was stable or mild. (Tr. 450, 452, 458, 489-490, 492, 497, 501-502, 508-509, 513-514, 517-518, 522, 527, 529, 639, 641-642, 656, 808-812, 814, 816, 842).

Although the A.L.J. did not accept Dr. Vasile's opinion, she accepted the earlier opinion of Dr. Bonner and the opinions of the State agency medical consultants, concluding that those opinions were consistent with the medical evidence in the record. State agency consultants are considered highly qualified in the evaluation of medical issues in disability claims under the Act, and where, as here, their opinions are consistent with the medical evidence in the record, they are properly considered as

---

as a whole. As discussed above, the Court cannot conclude that this decision was erroneous.

substantial evidence supporting the A.L.J.'s decision. Jones v. Sullivan, 954 F.2d 125, 128-129 (3d Cir. 1991); Rivera v. Barnhart, 239 F. Supp. 2d 413, 420 (D. Del. 2002). Accordingly, the Court concludes that the A.L.J. did not err in her evaluation of the opinions of Plaintiff's treating physicians, and that the A.L.J.'s decision to credit Dr. Bonner's earlier assessment along with the assessment of the consultative physicians was supported by substantial evidence.

With respect to her determination that Plaintiff could return to her past relevant work, the Court likewise finds no error in the A.L.J.'s decision. Based on the medical evidence in the record, the A.L.J. determined that Plaintiff could perform sedentary work in a clean environment. The vocational expert testified that Plaintiff's past work as a customer service representative, credit card clerk and data entry clerk were sedentary level jobs performed in a clean environment. Plaintiff contends that the A.L.J. erred because she did not list a series of symptoms or limitations that flowed from her impairments. However, it is evident to the Court that A.L.J. considered those limitations supported by the record, in this case Plaintiff's asthmatic/bronchial condition, by providing for a clean work environment and limiting Plaintiff to sedentary work.[2] The

---

[2]      Even if the A.L.J. limited Plaintiff to jobs requiring minimal conversation, the vocational expert still testified that she could perform the jobs of credit card and data entry clerk.

21

vocational expert also opined that Plaintiff would not be
precluded from this work by her use of a nebulizer three times
during the work day, provided that she used the nebulizer during
scheduled breaks.   There is no evidence in the record that
Plaintiff could not conform to such a schedule.   Accordingly, the
Court concludes that the A.L.J. did not err in her conclusion
that Plaintiff could return to her past relevant work, and the
A.L.J.'s decision was supported by substantial evidence.[3]

---

³       Alternatively, the Court concludes that even though the
A.L.J. did not proceed to step five, sufficient evidence was
adduced at the hearing from the vocational expert to carry the
Commissioner's burden at step five of demonstrating that the
Plaintiff could perform other work existing in significant
numbers in the national economy.   See Lamorey v. Barnhart, 158
Fed. Appx. 361, *3 (2d Cir. 2006); Comeaux v. Astrue, 2007 WL
4759401, *3 (W.D. La. Dec. 11, 2007) (Report and Recommendation).
Specifically, the vocational expert identified the jobs of
inspector checker of small parts of which there were 1400 jobs
locally and 625,000 jobs nationally and records clerk of which
there were 3500 jobs locally and 137,000 nationally.   The
vocational expert further identified these jobs as unskilled,
requiring little conversation and requiring only simple 1 and 2
step tasks.   Thus, these jobs take into account Plaintiff's
alleged memory limitations and her alleged limits on her ability
to converse.   Further, unskilled jobs such as those identified by
the vocational expert also comport with the moderate limitations
identified in the psychological assessments of Plaintiff, which
include moderate impairment in the ability to remember and carry
out detailed instructions and moderate impairment in
concentration persistence and pace.   Comeaux, 2007 WL at *3; see
also 20 C.F.R. 404.1568(a); 20 C.F.R. 416.968(a); Miles v.
Barnhart, 374 F.3d 694, 700 (8th Cir. 2004); Lewis v. Barnhart,
353 F.3d 642, 648 (8th Cir. 2003); Brown v. Barnhart, 2007 WL
2821964, *2 (E.D. Pa. Sept. 26, 2007).

## CONCLUSION

For the reasons discussed, the Court will grant Defendant's Cross-Motion For Summary Judgment and deny Plaintiff's Motion For Summary Judgment. The decision of the Commissioner dated March 19, 2004, will be affirmed.

An appropriate Order will be entered.